ROBERT PURVIANCE, JR., Permanent Trustee of
    WILLIAM BOSLEY, *vs.* WILLIAM W. GLENN and
    others, Exc'rs of JOHN GLENN.

The insolvent courts have no jurisdiction to compel the *executors or adminis-
    trators* of deceased trustees to account in these courts for the trust estate.

These courts have exclusive jurisdiction in the distribution of insolvents'
    estates and may proceed in a summary way against the *trustees* for default
    or neglect of duty.

In regard to the particular classes of trusts confided to them, these courts, in
    the exercise of a special authority, proceed upon principles of equity with-
    out being courts of equity.

The trustee of an insolvent may proceed to collect the property of the insol-
    vent in courts having jurisdiction of the subject matter, as in other contro-
    versies, but when collected he must account for and distribute it in the in-
    solvent court.

These courts proceed under special powers conferred by acts of Assembly,
    and the authority invoked must be shown to be within the limited jurisdic-
    tion.

APPEAL from the Court of Common Pleas for Baltimore
city.

This is an appeal from an order of the court below, sitting
*in insolvency*, passed under the following circumstances:

Bosley petitioned for the benefit of the insolvent laws and
John Glenn was appointed his permanent trustee in March
1828. In July 1853 Glenn died, and in October of that year
Purviance, the appellant, was appointed permanent trustee in
his place, and shortly thereafter filed his petition in the court
below against Glenn's executors, in which he states substan-
tially, that Glenn received large sums of money and property
belonging to the insolvent's estate, but died without having
settled the trust or in any way accounted for the property so
received by him. The petition then prays that the executors
may render an account of all moneys and property received by
their testator as such trustee, and that the same with interest
may be paid and delivered to the petitioner.

The answer of the executors admits that considerable prop-
erty of Bosley passed into the hands of their testator as his

Purviance, Trustee of Bosley, vs. Glenn's Exc'rs:

trustee, but alleges that said Glenn was the attorney and representative of the largest portion of Bosley's creditors, and was able and willing at all times to meet their demands, and that if any balance remained in his hands it was because in his multiplied engagements the trust remained unadjusted, he having never been required by the parties interested to close it; and because, as petitioner well knew, their testator claimed a large portion of the fund as his own, by virtue of an agreement between him and the creditors. The answer further alleges the willingness of respondents to account for the fund and pay over whatever may be due the petitioner if the court should assume jurisdiction of the matter, but it insists that though the court has power to control and direct trustees of insolvents it has no summary jurisdiction over the representatives of trustees; and that inasmuch as respondents have defences and claims upon the trust fund which can only be properly heard and determined in a court of equity, they except to and deny the jurisdiction of the Court of Common Pleas, and ask that the petition be dismissed.

To this answer the petitioner excepted as insufficient for various reasons, which need not be stated. The court, (MARSHALL, J.,) ordered the petition to be dismissed; "the court thinking that they have no jurisdiction over the executor in this case, but that he must be proceeded with as other debtors of the insolvent estate, at law or equity." From this order the petitioner appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK, J.

*T. Parkin Scott* for the appellant, argued:

1st. That the county court, under the late, and the Court of Common Pleas under the present constitution, has the sole and exclusive authority and jurisdiction to appoint trustees of insolvent debtors; *and also* the sole and exclusive authority and jurisdiction to administer and distribute the assets of an insolvent's estate. 4 *G. & J.*, 394, *Glenn vs. Karthaus.* 5 *Gill*, 179, *Alexander vs. Ghiselin.* 7 *Do.*, 170, *Carter vs.*

*Dennison.* *Ibid*, 398, *Gardner vs. Lewis.* 9 *Do.*, 240, *Powles vs. Dilley.* 1 *Md. Rep.*, 143, *Pierson vs. Trail.* *Ibid*, 471, *Waters vs. Dashiell.* 2 *Do.*, 17, *Glenn vs. Gill.* 3 *Do.*, 463, *Manahan vs. Sammon.* To enable the courts to exercise the authority and jurisdiction thus given they must have power over trustees appointed by them, *and also* over their assignees in fact and in law. *Acts of* 1805, *ch.* 110, *secs.* 4, 10. 1819, *ch.* 84, *sec.* 8. 9 *Gill*, 240. The Court of Common Pleas is limited in jurisdiction as to *subjects*, but has *exclusive* and *unlimited* jurisdiction in regard to the matters confided to it. *Cons., art.* 4, *sec.* 10. We therefore say the order appealed from must be reversed and the case sent back for an account and delivery of assets as prayed in the petition.

2nd. But it is objected that the appellees have defences and claims upon the trust fund which can only be properly heard and determined in a court of equity, and that they have a claim in virtue of an agreement between Glenn and the creditors. But the court of chancery, as the cases cited show, has no jurisdiction to settle the claims of creditors, and that must be done before Glenn's proportion of those claims can be ascertained. And assuming for the argument, that he has a claim, a court of equity could not adjust it without assuming jurisdiction of the insolvent's estate, which it is forbidden to do. 1 *Md. Rep.*, 143, 471. 2 *Do.*, 17. 3 *Do.*, 463. Again, conceding that the account between the estate of the insolvent and the executors of the deceased trustee ought to be adjusted according to the practice and principles of courts of equity, it is settled law that the courts to which jurisdiction in insolvency is exclusively given must proceed and determine according to equity. They must surrender the property to the present trustee and then come in with their claim. 7 *Gill*, 172. *Ibid.*, 398. Until the present trustee knows what property was sold by the late trustee, and what claims were collected by him in his lifetime, and until he has possession of the title-papers, books and accounts of the insolvent, he cannot reasonably proceed to execute and complete the trust.

*F. K. Howard* and *S. T. Wallis* for the appellees, argued:

1st. That the Court of Common Pleas, sitting in insolvency, is a court of limited jurisdiction, clothed with no powers except those specially given by acts of Assembly; which acts have not in any case extended the summary jurisdiction of the court beyond the person of a delinquent trustee, leaving the remedies of his successor and of creditors to be exercised against his representatives after his decease through the ordinary courts of law and equity. The 10th sec. of the act of 1805, ch. 110, giving summary powers to the court, confines itself exclusively to existing trustees. The act of 1819, ch. 84, sec. 8, is confined to provisional trustees *failing to comply.* 4 *G. & J.*, 394, was the case of a provisional acting trustee refusing to give up the assets, and was clearly a case for summary proceedings. See also *acts of* 1832, *ch.* 203, *sec.* 3; 1833, *ch.* 173, *secs.* 5, 6, and 1835, *ch.* 235. The concession that suit may be brought at law on the trustee's bond yields, the point that the jurisdiction of the insolvent court is not *exclusive.*

2nd. That the jurisdiction contended for by the appellant would involve the settlement of the deceased trustee's estate in the insolvents' court, and the exercise of the powers of the orphans court, as well as the general jurisdiction of equity over the estates of decedents. No such extraordinary jurisdiction was ever contemplated by the legislature in giving the insolvents' court the right of making distribution according to equity. *Acts of* 1836, *ch.* 133, *sec.* 2. 1798, *ch.* 101, *sub-ch.* 14. 1820, *ch.* 174, *sec.* 3. 1831, *ch.* 315, *sec.* 7. 1 *H. & G.*, 96, *McCulloh vs. Dashiell.* 7 *Gill*, 172. 4 *Md. Rep.*, 529, *Dent vs. Maddox.* 6 *Do.*, 347, *Lowe vs. Lowe.* All the authorities cited on the other side to this point are cases of *distribution*, and in that particular the insolvents' courts follow the courts of equity.

Tuck, J., delivered the opinion of this court.

We are of opinion that the petition of the appellant was properly dismissed, for the reason stated by the Court of Common Pleas.

It is very clear, as shown by the appellant's counsel, that

the Court of Common Pleas has exclusive jurisdiction in the distribution of insolvents' estates in the city of Baltimore, and that it may proceed in a summary way against trustees, under the circumstances mentioned in the acts of Assembly referred to on this point. But it does not follow, that these powers may be exerted against their executors or administrators for the purpose of compelling them to account in that court for the trust estate. This action of the court against the trustee is based on some alleged default or neglect of duty in his capacity as such, which cannot be imputed to his executor or administrator. The latter derives no authority from the insolvents' court, is not under its control nor accountable to it, any more than the trustee is to the orphans court.

Although trusts are peculiarly the subject of equity jurisdiction, this particular class of trusts has been confided to courts of common law, in regard to which, in the exercise of a special authority, they proceed upon principles of equity without being courts of equity. *Carter vs. Dennison,* 7 *Gill,* 157. We must not mistake this control of the court over the trust funds, for the power of the trustee to institute proceedings in the proper tribunals for the purpose of collecting them together. Property belonging to the insolvent may be in different places, or suits in equity may be necessary to vacate assignments; in all which cases it is manifest, that the trustee can proceed only in the courts having jurisdiction over the subject matter, as in other controversies. But when the suits are terminated, the funds must be accounted for in the court from which the trustee derives his authority. So exclusive is this jurisdiction, that where a bill was filed in equity to vacate a fraudulent deed and the deed avoided, that court was not allowed to retain the case and grant complete relief by distributing the proceeds, nor even to the extent of making sale of the property by a trustee of its own appointment, but the case was left to the power and action of the trustee in insolvency. *Jamison vs. Chesnut, Ante,* 34. The prevention of confusion and possible conflict of jurisdictions is one of the reasons assigned for confining the settlement of these trusts to one and the same tribunal. 5 *Gill,* 138. *Waters vs. Dashiell,* 1 *Md. Rep.,* 471. This consideration

applies with equal force in restraining these courts from drawing within their special jurisdiction matters more properly cognizable in other courts, and thereby, as incident to the duty of making distribution of the insolvent's estate, possessing themselves of the power to marshall the assets of deceased trustees, when the laws have appointed different tribunals for the settlement of their estates.

If the estate be insolvent, (and we do not think the principle is affected by the admission of assets in this case,) the common law court, sitting in insolvency, cannot ascertain the amount due by it on account of the trust without investigating the whole personal estate, determining questions of priority and making a ratable dividend among the creditors. This, it is argued, can be done as readily as a plaintiff's proportion of assets is ascertained in suits at law. Probably, looking to the different manner of taking the account, it may be accomplished with greater justice to the parties than in a suit at law; but we must pay regard to judicial systems as we find them established. At law, relief is granted in the exercise of common law powers by courts of general jurisdiction, in which administrators have always been impleaded; whereas, these courts, in matters of insolvency, proceed under special powers conferred by acts of Assembly, and the authority invoked must be shown to be within the limited jurisdiction. *Bowie vs. Jones*, 1 *Gill*, 208. Besides, if this proportion of assets can be determined by the court, sitting in insolvency, as in cases at law against the executor or administrator, why may not the proceeds of the real estate be made applicable there also, as in suits in equity when the personal estate is insufficient? Indeed, if the appellant's present pretensions be acknowledged as within the purview of the exclusive jurisdiction of the Common Pleas, as a court of equity, *pro hac vice*, it would seem to be quite as appropriate that it should determine the claimant's dividend of the proceeds of the realty as to call for an account of the personal assets. Executors and administrators are liable only in respect of their relation to the personal estate, and on the same principle the heirs and devisees would be responsible as representing the real assets, and therefore subject to be called on to make good

thereout any deficiency of the fund primarily liable for the payment of debts. But it is manifest, that these courts have no such jurisdiction over the real estate of a deceased debtor.

It may be, as urged on the part of the appellant, that defences will be relied on by the appellees, if sued elsewhere, by which the claim may be defeated altogether. On this point we intimate no opinion. But if the remedy is gone by lapse of time, the fault is not with the present trustee. The creditors had ample redress under the acts of Assembly against the former trustee for any supposed default, and cannot now offer this suggestion as a ground for clothing the Common Pleas with powers not granted by the constitution and laws.

*Order affirmed, with costs.*